Good morning, Your Honors. Thank you, Ma'am Justice Court, Jason Flanders, for plaintiff appellant in the Ecological Rights Foundation. Will you speak a little louder, please? Yes, thank you, Your Honor. Ma'am Justice Court, Jason Flanders, for plaintiff appellant in the Ecological Rights Foundation. We've yielded four minutes to your SEPA, specifically to address the anti-discrimination provision, and I would like to reserve some minutes for rebuttal. If I may begin by placing this case in the... Can you make that a little louder? I'm having trouble with it. I can try to speak up more. If I could begin by placing this case in both a regional and an environmental context before getting into the substance. This facility is distributed to San Francisco Bay and Humboldt Bay, both of which the regional water boards have determined to be impaired by dioxin contamination. The San Francisco water board has gone so far as to issue a fish consumption advisory warning the number of fish should not be consumed under any circumstances, and others should be strictly limited. Now the water boards, of course, regulate the dioxide flow to the bays under the Clean Water Act, but these facilities are not regulated under the Clean Water Act, and as a result, they're very likely to... The San Francisco water boards in San Francisco, Arizona, did not quickly get involved. I know they're not getting dealt with, which isn't perfect, but while that's an ad, there's no other regulation. In no way, shape, or form, Your Honor, are these facilities bound to comply with any Clean Water Act requirements. There's an issue, I gather, about the local inspections. Can you speak to that? I'll be happy to address that. I'll address it now, which is great. Thank you, Your Honor. Given that they are not regulated under the Clean Water Act, they're very likely the largest contributors to dioxins already in their water bodies. I'd like to provide one example. Here in San Francisco Bay, Chevron Richland Refinery is probably one of the largest contributors to pollution to the bay, and it is regulated by the water board with set permit limits for dioxin discharges. Our experts have sampled discharges from PG&E's Oakland facility, because directly in San Francisco Bay, they found dioxin levels that are 4,000 to 8,000. That's a merit, so let's just talk about it as you go. Thank you, Your Honor. I might have been there, right? I mean, in other words, there's the question of whether this is a solid waste, whether it's regulated by a record, how, and all that. It's really not before us yet. Your Honor, I would respectfully disagree, and urge the Court to consider full rules on the merits. If not— And is she correct in ruling it either? That's correct, Your Honor. There is precedent in this survey, because on appeal, the appellate court hears a case to no vote. You're not bound by the limited exchange of serious cases. That's right, Your Honor. I'm on that one. Actually, there was one merit, so I would like to thank the legislative court to say with regard to the fracking claims that could fail to come forward with any evidence that would impact the contamination to the bay. If it's correct, Your Honor— Is that on challenge? We have submitted our expert testimony observing track sediments from the facilities, as well as municipal storm drains that collect those track sediments in rainwater and discharge those to the bays. The evidence is strong, and in our view, does subject to reasonable dispute. Thank you, Your Honor. I do want you to hear from the EPA on any identification provision, because of the difference that is there to a regulatory agency on these issues. And I don't want to duplicate their arguments. Let me ask you about the CWA. Is it your position that EPA has not rolled out a comprehensive regulatory scheme for stormwater runoff under the CWA? The Clean Water Act does provide a comprehensive regulatory scheme. Under the plain language of RCRA, that's not enough to prohibit any potential RCRA liability. I think the sentence of this is job done under the CWA. Excuse me, Your Honor. Is EPA's job done? Does it have more to do with it than it could do? EPA, like all agencies, is limited in its resources. All right. My understanding of the scheme is that there are certain sources that are required and there's a required purpose for it, and there's an ongoing system of forehanding to that. I hear you're saying it hasn't happened and it's going slow, essentially. Perhaps. It may never happen. It has not happened. It may never happen. And, again, I think Judge Posner's well-recent opinion from the Seventh Circuit in the Inland Steel case is very helpful here, because in that case, steel companies were discharging wastewater into deep detection wells. And the U.S. EPA was concerned that this wastewater may eventually contaminate unhavenable waters in the United States. And the steel industry, in that case, argued, well, this is the type of activity that EPA generally regulates, and that the Clean Water Act is a point source discharge of a water-bound pollutant. And Judge Posner disagreed and said, There are three people on the Court, actually. Excuse me? It seems a little strange talking to Judge Posner. Does he agree there are three people on the Court? I think Your Honor, the Seventh Circuit has ruled that more than a mere plausibility, the Clean Water Act regulation would be required to preempt or duplicate the Montgomery Court of Regulation. I think the most obstructive cases before you now are the Fourth Circuit's recent ruling in Goldfarb, in which it held that the Clean Water Act is not a wholesale bar to breaker enforcement. In fact, seven cases held that even where an activity is actually covered by a permit, the defendant needs to make a showing of an actual inconsistency in requirements in their Clean Water Act permit compared to what a breaker would require. The Fourth Circuit has said inconsistency means fundamentally at odds, and it may be okay for a breaker to mandate a different or even greater level of pollution control as long as the company or facility will not be subject to inconsistent requirements, and that's the precise term used in this case here. What does that matter to you? If there were a supposed, I can't believe there is one, if the EPA has affirmatively decided that this stormwater should not be regulated, it just hasn't regulated it at all. That's correct, Your Honor. Let's suppose that for some reason they had an affirmative decision that this kind of stormwater should not be regulated.  And the breaker was adopted as a gap filler to close one of the last remaining loopholes in environmental law with the Clean Water Act, just with the enforcement of discharges to waters, to air, and to air. A breaker considers discarding a disposal of solid waste land, so let's assume we accept that characterization. Is it a possibility of an absurd result, given the potential for coexisting regulations, that is for lower priority pollutant discharges could be regulated more heavily? Your Honor, he has not rendered any determination that these are lower priority pollutant discharges. I thought that's exactly what he's done. I thought that's what they should be. Your Honor, if they're disposed to make priority decisions. I will let EPA address that to an extent, but again, due to regulatory and social constraints, the fact that EPA has regulated some. But in this instance, you can only bring a citizen suit if there's an imminent and substantial engagement. So it's not really a question of it's not regulatory exactly, and you have to go for an imminent and substantial engagement. Whether you have or haven't, the point is that it's not, you know, for a regulatory scheme, and it's only for dire circumstances, as I understand it. And is EPA consistent with the imminent and substantial engagement claim, compared to what PG&E requirements are under the Clean Water Act? Of course, that is the remainder of my time. Thank you. Good morning. May it please the Court. Judy Harvey, representing the United States, as amicus in support of reversal. Citing Brooker's anti-duplication provision, the Court held that stormwater off poles and roadways and PG&E facilities can only be regulated under the Clean Water Act and not RCRA. The United States is concerned that this broad interpretation, if upheld, may impair the ability of citizens and, arguably, the EPA to address potential harm under RCRA. So I'd like to focus on the text of the anti-duplication provision itself, which says, RCRA shall not apply to any activity or substance which is subject to a Clean Water Act or the other listed statutes, except to the extent that such application or regulation is not inconsistent with the requirements of such acts. So here, the District Court ruled that RCRA is preempted because the stormwater, in theory, could be regulated under the Clean Water Act. No, it's not. But the District Court overlooks the text of the anti-duplication provision, which refers to an inconsistency with requirements of the Clean Water Act. So not inconsistency with another statute, but inconsistency with the requirements of that statute. So that requires a case-by-case looking at the requirements of the Clean Water Act and comparing those to the requirements of whatever is imposed under RCRA. Here, it's an examination of whether there's any substantial detriment. This Court held in Gorman v. Waffle and Abramson, relying on Supreme Court precedent, a requirement is a rule of law that must be obeyed. This understanding of requirement is consistent with the Office of Legal Counsel's 1984 opinion interpreting the anti-duplication provision. The opinion reasons that requirement implies some prescriptive content. So that opinion is characterized at times in the briefing as an agency opinion. It is not the EPA's. No, it's not the EPA's opinion. It was EPA's interpretation. It advanced to the OLC. It was before the amendment to the Clean Water Act, right? It was before the amendment to the Clean Water Act. And I can address that. But what about, and I understood all of this on my own, but what about this thing I mentioned before,  on inspecting the water discharge for these locations? Are some of them, or is there all of them? I believe it's used as municipal ordinances. Municipal, it's not the Clean Water Act. It's not due to the Clean Water Act. I think there's some relation, I think you addressed it on rebuttal, but they're not Clean Water Act requirements. I thought there were some Clean Water Act requirements as opposed to municipalities, no? No. And so in terms of what the Swarm Water 1987 amendments, what they did was set up a priority for the regulation of swarm water. And so the highest priority, Swarm Water Fluid and Swarm Trust first, and EPA pertains to the ability, since these fit to regulate on a case-by-case basis, but EPA does not have the resources, or the state has the resources to go to every single site throughout California or the nation to determine whether or not under a particular site may be creating harm to the environment. And so that is why, I mean, I guess the problem is that, because there is one that is basically, potentially was pointing to, which is there's a regulatory scheme which at least gives people very clear notice of what you're supposed to do and not supposed to do, and then to give permits and so on. And then there's this other kind of free-floating, you know, citizen situation where the company doesn't really have guidelines or practices on what the rules are. I can give you an example of something that may be illustrative. So the EPA regulates facilities under certain circumstances and they prescribe regulations that doesn't preclude EPA from bringing in even a substantial endangerment claim if it so turns out How high is the risk of an imminent endangerment? It may present an imminent substantial endangerment, so it's a risk of endangerment. Okay. But does it have some sort of emergency-like piece to it? It doesn't have to be an emergency, but it has to be imminent and substantial. So it could be a plume that is coming or reaching groundwater. I see that I'm over time. I'm happy to answer more questions. No, that's fine. Thank you very much. Thank you for doing this. Thank you for talking. Oh, well, actually, I do have a question. Do you have any argument with regards to any difference argument that comes out of your appearance here today? I mean, I know there is some law that says, which is a little peculiar, that when the government is inducing or perhaps is allowing some deference to the law, you're actually a litigant. Are you arguing for any government deference here? We're not arguing for deference to our amicus brief, no, but we do. I think that the OLC opinion can be accorded some deference by the court, and it is a position that EPA advanced to OLC. But there's no regulation or step? No, not a step. Or anything of the sort? Is there any other embodiment of this position other than the OLC opinion in your experience? Not that I know of. Thank you. Good morning. May it please the Court? My name is Brad Rockley, and I represent the Spanish Electric Company, a descendant of San Diego. The question for this Court is actually quite limited, despite what we've been talking about thus far. Does Brickler govern the stormwater from these facilities as they go into the bay, the stormwater that is already subject to the Clean Water Act under a comprehensive regime? More general questions about whether stormwater can be covered under RCRA or not before this Court. On-site disposal or on-site stormwater? This is quite a good question. It is a conceptual one. As to how it would apply to the particular instances, we will send that to the district court, because essentially how it was never covered. It is the court held, as I understand it, that because these facilities are potentially subject to the Clean Water Act permitting requirements, although they are not in fact, that is enough to make RCRA an absolute law, period. Well, the full record here is what the judge was ruling on, and this is not a grand policy question necessarily. It is a grand policy question, because that's what the ruling was, and that's what we have before us. It's a legal question. A articulated version is the risk one. It can be down, up, down, and a lot of them. Well, the question that he was looking at was specific to stormwater releases from the point source into the bay. Your standard record case deals with on-site disposal. He had already ruled that out in prior rulings. There were several motions to dismiss, state summary judgment on standing and summary judgment. On the Clean Water Act, it actually limited the scope of what he was ruling on, which was specifically does the stormwater from these facilities, and I want to be clear, they are regulated under the Clean Water Act. And what's being regulated? First of all, they're subject to, as we discussed, the EPA permitting. But I have a question. I asked you something. Are they actually regulated anyway? I was told no, and you're saying yes. I am saying yes. Okay, and what way? As our experts have testified to the record, there are municipal stormwater permits under the Clean Water Act for each of these facilities that are subject to these municipal stormwater. Now, those permits are enforced by the local municipalities, but the permit itself is a Clean Water Act permit under the National Inclusion Plan, and those are Clean Water Act requirements. So it's not municipal, or is this just what happened originally? There are municipal ordinances involved, but the permit itself is a general municipal stormwater permit under the Clean Water Act. And therefore, how does that have to regulate the PG&E? Because PG&E is required to comply with the municipal permit in order to release it to its consumers. Well, it seems that was right. Constantine mentioned that he was doing this to spoil the anticipation that it would happen. Yes, sir. So you're saying that there's no need to consider whether or not there's a loophole here? You're saying there's no loophole? They're just full, half-full regulations, and so the Congress will intend to close the last loophole in adopting record on that? That's irrelevant? That's correct. I do not believe there's a loophole. And as Judge Seward said, if the ERF is challenging the deposit of PCP, that's chlorophenol oils, onto the ground of facilities, a record claim might be theoretically viable. But ERF is not the right place. And most of their evidence goes to concert just as they have not demonstrated in the Congress of the Clean Water Act a point-source discharge regime. Did Judge Seward not decide in the abstract and in general that because CWA could resolve to sound the line in the permitting requirement, therefore a record can't apply? Is that what he decided in his paragraph? Is that what he said? But that was, yes. Okay. So you can talk about that or you're not? I'm, yes. I apologize, Judge. That was the language that he used, but that is based on the record and the question that was posed. So you're not going to extend that position as far as where we are? Okay. The Clean Water Act, we believe, 2.1, it is covered by these municipal permits. But in terms of industrial stormwater, no Clean Water Act permit is required, but that does not mean that they are not subject to a permit requirement under the Clean Water Act. And because they are subject to it, Judge Mueller brought up the absurd results under it, and we believe that that's a real possibility here, that the EPA has determined that stormwater from these types of facilities, and indeed they are definitely subject to these facilities on the nine images below, have a low risk of potential contamination, and they require general industrial stormwater permits for ones that have higher risk. We would be in a subject where a brick road would be imposing harsher sentences on facilities that have a lower risk of contamination. So I think we end up with... Well, scarcely a lower risk, but that doesn't mean that there isn't one that is creating an imminent substantial harm. Well, the EPA is required to look at that, and if they determine that there is a risk of contamination, they are required to get a permit. There is a phased program under the Clean Water Act to do that, and they have looked at these facilities, and they have done it for a long time. Specifically, what is the conflict of the requirements in terms of the language of the statute that you're pointing to? The conflict would be in the language of subject to the Clean Water Act. We have these permits that require us to have... There's no more subjects. The question is the rather broad statute, in the statute, in the record statute. I'm sorry? Yes, in the record statute, there is a provision that says that the exclusion doesn't apply if there is... if the requirements are not in conflict or something. I don't have the exact language in front of me, but you keep running away from that language. How does it apply here? It applies because the Water Quality Act developed a comprehensive regime for regulating stormwater. But why is there a requirement of the CWA that it would be in conflict with this requirement? What is it? Well, specifically here, we have the compliance of the municipal permits would be inconsistent with additional requirements. But that's it? You're just restricting the municipal? Well, that matters to me. The fact that we are subject to an anytime EPA being committed to give us a permit, that means that we could... That's what I was going to ask. It's like we'd be in a different ballpark by 8 p.m. That's what you're saying? The board is not in compliance with the permit established in the contract. Because the company understands, and the workers there understand what they have to do to comply, and now we're being told that it's an ad hoc regime, and it's being enforced not by the EPA or the local municipality, that it's going to require... Does it ever show what the... So you're restricting largely, primarily now, the municipal regulation as it comes into requirements? As it comes into requirements. We have the municipal regulation. I saw some checklists. I don't know what you mean. I don't care about it. But aside from that, you don't have your... As far as I know, in your brief, you did not say that we are required by these municipal regulations and that we create a lot of... We do discuss the inspections that occur. I understand there are inspections. Is there a fine? Is there an enforcement mechanism? Yes. What are the requirements relating to that? If we're found to be not in compliance with the permit, with the municipalities' rules and regulations, there can be a fine. There can be action taken and required of them. But each time they have come and inspected and found that no further action was necessary. I also wanted to address the deference issue. We blame deference to EPA. You said that. So what did you talk about? What did you determine? I wanted to talk about something a little bit different, which is the deference to the EPA rulemaking, which is a formal notice of permit rulemaking where they determine that no permit was necessary and that they didn't use this type of facility and determined that no permit was required. No permit was necessary and was required to be offered to any other facilities. Under the statute, correct. And they've made an affirmative determination? No, not specifically to be used in a facility, but to facilities of this type. So it's not just the no decision. It's an effective decision and an affirmative decision. Correct. They have looked at this type of facility and determined that it was not required. And the comments were made by Humboldt. It wasn't required to determine that it wasn't a priority? It wasn't at this time required. They can revisit it at any time. Aren't you saying that they're not opposing the requirements? You're not saying because we think there's a sign or because it's not a priority? They are required. They think that it's potential for harm to require a permit under the statute. The Water Quality Act made them go back and look at the priority problem areas and require permits. And here they looked at it and said it's not required. And, in fact, comments very similar to this litigation were made by Humboldt Baykeeper requesting that permits be imposed in these particular type of facilities. And California state regulators that have differenced from EPA on this issue looked at it and said, no, they're not required by EPA and we're not requiring them either. So the issue, we believe, was settled. Does that have the effect of immunizing these facilities? In terms of the limited area of stormwater to the bays, yes, we think it does. Suppose there's a facility where it turns out that there's a dramatic problem. Should the decision that facilities of this type should not require a tax-funded permit regulation serve to immunize them? In all instances, if we are in a particular facility, there might turn out to be a serious problem. The mechanism in place to require specific case-by-case... Well, before I'm saying there is a... a major problem on one of these facilities or somebody else's facility, and all of a sudden there's a huge spill of horrible book into the facility that is not requiring... I see nothing but a permit in one. Well, two things. There's no required assistance available. Well, yes. I was asking what the level is. I'm not imagining it in a perfectly real mix. If there's a spill of something, we're not talking about stormwater anymore, we're talking about... I see stormwater, but is there something in this plant which all of a sudden... Well, let's be specific. Right now we have an awful lot of storms, so therefore there's going to be a lot more stormwater than there has been for a long time, and if you have a plant that is spilling something, there's going to be a lot more of it than there's been for a long time, so I'm imagining something akin to an emergency. And there would be a reporting requirement under our current permit. It's fine if you report, but could somebody bring a lawsuit and stop it? There could be something bad in it, but you'd clean it up. If there's a spill, yes, I think that would be an instance where there would be... I'm just asking you the same argument. If there's no CWA permit required for this plant, because it's not in the category that requires it, but in fact, in a specific instance, there's an imminent disaster, nobody can bring a lawsuit is what you're saying? No. I'm saying that only the Clean Water Act you could bring an amendment, and that's not a spill of a contaminant. Even if it gets into stormwater, it's also spilled into ground and around. It's a different issue. And there is a mechanism under the Clean Water Act to teach an EPA to require permits. But when you're talking about specific spills, small tax spills, those aren't regulated under a permit. Those are special circumstances that can require intervention by EPA. But if it's a slow drip, not an emergency spill, isn't the argument that there's at least a slow drip into the waters? That would be an inspection or something like that. But again, there's reporting requirements under the municipal permit we are required to take all activity to minimize anything getting into our stormwater. The anti-duplication issue, I just wanted to touch on briefly. Is this all about the anti-duplication issue? Yes. I wanted to talk about the case law just briefly. I'm sorry. I should have been more specific. The case law that is mostly in ERS briefs mostly deals with motions to dismiss and says that you need a record. We have a record here. We've been through discovery. I didn't look at the record for this purpose because you said no matter what, there's no case for the record case. I believe the judge was taking the record into account when he said this specific stormwater was not regulated because he had, to the knowledge of the record, we had a former oral argument on the subject as well as his former summary judgment rulings on the motions to dismiss, that he was very familiar with the limitations on the question that was put in front of him. So the district court decisions on motions to dismiss are not really binding precedent here, which he was looking at. And if you have any further questions, that's my time. Thank you very much. Thank you. Your Honors, this court, if I may begin with a factual clarification, PG&E's Oakport facility does not discharge to a municipal storm system. It is in no way, even arguably, covered. The Oakport facility in Oakland discharges directly to San Francisco Bay, so there are no municipal stormwater local ordinance requirements that would justify it. As you can see, the Supreme Court, as well as the early district have ruled that there's no vicarious, discharges are not insulated from liability because they discharge into a system owned and operated by other entities. Only the permit holder is subject to the Clean Water Act requirements, and therefore the permit holder gets the benefit of the permit. I'm not concerned about it. So there's no argument here. My understanding of what you're saying with regard to the other municipalities, so a lot of clarification is useful, is that the municipalities are, as I understand it, have municipal permits under the Clean Water Act. Is that right? That's correct, Your Honor. And the enforcement of them are in stark regulating terms. And the question is how to exercise their police powers to control pollution in their streets. And that's what the municipals do. That's not water, it's your street. The water goes into the street storm drain, and Fiscore would have ruled that any facility within a city is exempt from RCRA, that would have sweeping and absurd results. It's not enough that a discharge is potentially regulated by the Clean Water Act. If you look at the definition of disclosure in RCRA, it says it includes water that may be discharged into any water. So arguing anything that may be discharged into any water can be subject to the Clean Water Act. That's not enough. The Fourth Circuit has said we need actual conflicting Clean Water Act and RCRA requirements. It would be an absurd result if all these entities that have Clean Water Act permits are still subject to BRIC reliability. There's seven such cases out there. On the other hand, an entity like PG&E that has no Clean Water Act requirements is deemed to be immune from RCRA for having an inconsistent requirement with a general requirement in place. Again, Your Honors, I wanted to know whether you had substantial harm from these facilities, whether to look again at the merits of the case, preliminary injunction. Very simple remedies. We strongly believe in successful merits and a very simple exemption. And at least with remand, we can see our remedy. Some guidance to the lower court beyond the anti-duplication provision would be appreciated, Your Honor. My talk is running over. Thank you. Thank you for your argument. Ecological Rights Foundation v. PG&E is a political club. Ag and money are everything. Ag and money v. PG&E.
judges: Berzon, Clifton, Mueller